LELA A. SIBELL, complainant and appellant,

*v.*

CAROLINE C. WEEKS and JOHN H. WEEKS, defendants and respondents.

[Filed June 17th, 1903.]

1. The holder of a mortgage not recorded when a bill is filed to foreclose another mortgage upon the premises, is bound by the decree in such foreclosure suit as if he was a party and had appeared to the suit.

2. He cannot file an original bill upon the unrecorded mortgage, but must seek his rights by applying to intervene in the first suit in accordance with the provisions of section 78 of the Chancery act (*Rev. p. 118*). now section 58 of the Chancery act of 1902.

On appeal from a decree in foreclosure.

*Mr. Edward Q. Keasbey,* for the appellant.

No one appearing for the respondents.

The opinion of the court was delivered by

Van Syckel, J.

This bill was filed to foreclose a mortgage given by Carlton Betts and wife to Hiram Betts and by him assigned to complainant, Mrs. Sibell. The title to the property at the time this mortgage was given was in the wife of Carlton Betts.

There was a prior mortgage upon the premises, given by Ruth Dean, then owner of the mortgaged premises, to the Mutual Life Insurance Company.

In June, 1892, the Mutual Life Insurance Company filed a bill to foreclose its mortgage, to which only Carlton Betts and his wife were made parties.

The mortgage now held by the complainant had not at that time been recorded.

The Mutual Life obtained a final decree in November, 1892, and caused a *fieri facias* to be issued thereupon the same month.

Shortly after the decree was made the dwelling-house upon the property was destroyed by fire. It was insured by the Royal Insurance Company, of Liverpool, and the policy was held by the Mutual Life as collateral security for the mortgage debt.

In February, 1893, the insurance company paid the Mutual Life as much of the insurance money as was necessary to pay the full amount of the decree and costs, exclusive of sheriff's fees, and took an assignment of it.

The sheriff continued to adjourn the sale of the property under the *fieri facias* until the 7th day of the following June, when it was sold to Carlton Betts, who acted as agent for his wife, for the sum of $100. The deed was not delivered until February, 1894, at which time Carlton and his wife executed a deed for the same premises to Caroline C. Weeks, the defendant, for the consideration of $1,225, which was actually paid.

After taking title Mrs. Weeks built a house upon the foundation of the one destroyed by fire, at a cost of over $2,000, and otherwise expended upon the property an additional sum of over $2,000.

The present foreclosure suit was commenced by Mrs. Sibell on

the 28th of August, 1895, a year and seven months after the sale to Mrs. Weeks, during which time she made the expenditure above stated.

At the sale under the *fieri facias,* issued on the decree of the Mutual Life, the property was struck off by the sheriff to Carlton Betts in June, 1893. Carlton then gave to the sheriff a check for the purchase-price, payment of which check was refused.

In November of the same year the sheriff applied for a re-sale, and an order was made to resell on a sworn petition, which stated that the decree had been assigned, not paid.

In January, 1894, upon the application of Mrs. Betts, who had then secured a purchaser in Mrs. Weeks, the order to resell was rescinded and a new order, dated February 2d, 1894, was made by the chancellor : "That the said sale be and the same is hereby ratified and confirmed as valid and effectual in the law, and the said sheriff is hereby directed to execute a good and sufficient conveyance to the said purchaser, Carlton H. Betts."

In pursuance of this order a deed was made by the sheriff to Carlton H. Betts and a deed by Carlton and his wife to Mrs. Weeks, before set forth.

Section 78 of the Chancery act (*Rev. p. 118*) provides:

"That in any suit for the foreclosure of a mortgage upon, or which may relate to real or personal property in this state, all persons claiming an interest in, or an encumbrance or lien upon such property by or through any conveyance, mortgage, assignment, lien or any instrument. which, by any provision of law could be recorded, registered, entered or filed in any public office in this state and which shall not be so recorded, registered, entered or filed at the time of the filing of the bill in such suit, shall be bound by the proceedings in such suit so far as the said property is concerned in the same manner as if he had been made a party to and appeared in such suit, and the decree therein made against him as one of the defendants therein ; but such person, upon causing such conveyance, mortgage, assignment, lien, claim or other instrument to be recorded, registered, entered or filed, may cause himself to be made a party to such suit by petition, in the same manner as is by this act provided in the case of persons acquiring an interest in the subject matter of a suit after its commencement; the petition in such case must set forth such instrument at length, and the title and interest of such party in such a manner as to show that he has an interest in the subject matter, and is a proper party in that suit."

Mrs. Sibell's mortgage being unrecorded when the bill for foreclosure was filed by the Mutual Life, she, as holder of the unrecorded mortgage, was subject to the express provisions of the said seventy-eighth section.

*First.* She was bound by the proceedings in the said foreclosure suit, so far as the property is concerned, in the same manner as if she had been made a party to and appeared in that suit and the decree had been made against her as one of the defendants therein

*Second.* By causing her mortgage to be recorded she could, upon petition, have procured an order making her a party to that foreclosure suit.

Mrs. Sibell is now seeking, by her bill of foreclosure, to establish her mortgage as a lien paramount to the title of Mrs. Weeks by imputing to Carlton Betts and his wife a fraudulent scheme to cut off her mortgage, and charging Mrs. Weeks with a knowledge of such facts as should have put her upon inquiry, which would have led to the discovery of it.

But, upon the assumption of such a situation, she cannot maintain an original bill to foreclose her mortgage.

By force of the statute above recited, and under the order of the chancellor confirming the sale, the legal title to the mortgaged premises passed to the purchaser at the sheriff's sale, clear of the mortgage of Mrs. Sibell until otherwise decreed in that suit.

In view of the force to be attributed to the adjudications of courts of general jurisdiction, her only remedy was to intervene in that suit by petition.

So far as the present litigation is concerned, she must be regarded as having been a party to the Mutual Life foreclosure, in which her rights as mortgagee were settled, without being subject to be reviewed in her subsequent foreclosure suit. She occupied the same position as if she had been actually a party to the prior suit and had appeared thereto and set up the claim she now makes in right of her mortgage.

If she had interposed with reasonable promptness in the prior suit, she could have secured such equitable relief as she

was entitled to. By reason of her delay for nineteen months to prosecute her claim, during which Mrs. Weeks purchased the property and expended a large sum of money upon it, she is justly chargeable with laches.

The evidence chiefly relied upon to charge Mrs. Weeks with knowledge of the complainant's rights is that her attorney, before she employed him in this transaction, had acquired such knowledge.

Whether the principal is affected only by such knowledge of his agent as the agent acquires in the business in which he is employed, or whether knowledge previously acquired by the agent can be imputed to the principal, has been the subject of discussion in two cases which are not in accord in this court. *Sooy* v. *State, 12 Vr. 394; Willard* v. *Denise, 5 Dick. Ch. Rep. 483.*

It is unnecessary, in the decision of this case, to express any opinion on this question.

The decree of the court of chancery should be affirmed, with costs.

*For affirmance*—THE CHIEF-JUSTICE, VAN SYCKEL, DIXON, GARRISON, FORT, GARRETSON, HENDRICKSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VOORHEES, VROOM—13.

*For reversal*—None.